### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

K.I.,[1]

        **Plaintiff,**

v.

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

        **Defendant.**

Case No. 20-1110-DDC

### MEMORANDUM AND ORDER

Plaintiff K.I. seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for benefits under Title II of the Social Security Act, as amended.  Plaintiff has filed a brief asking the court to award her benefits immediately.  Doc. 11 at 23.  The Commissioner has filed a response brief (Doc. 12).  This matter ripened for decision when plaintiff filed a reply brief on December 8, 2020 (Doc. 13).  Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits.  The court explains why, below.

## I.   Factual Background and Procedural History

Plaintiff applied for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401–433 on August 9, 2017, alleging disability beginning on August 8, 2015.  Doc. 10 at 198 (AR 190).  The Commissioner denied plaintiff's claim initially on September 8, 2017, and again

---

[1]   The court makes all its "Memorandum and Order[s]" available online.  Therefore, as part of the court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to caption such opinions using only plaintiff's initials.

denied the claim upon reconsideration on December 19, 2017.  Doc. 10 at 83, 126 (AR 79, 122).

Plaintiff appeared and testified at a hearing conducted before an Administrative Law Judge

("ALJ") on November 20, 2018 (Doc. 10 at 35).  On February 6, 2019, the ALJ issued a written

decision in which he concluded plaintiff was not disabled as the term is defined in the Social

Security Act.  Doc. 10 at 16–18 (AR 12–14).  Plaintiff filed an appeal with the Appeals Council

of the Social Security Administration on April 5, 2019.  Doc. 10 at 193 (AR 189).  On February

18, 2020, the Appeals Council denied plaintiff's request for review.  Doc. 10 at 5–7 (AR 1–3).

Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review

and reversal of the final decision denying her DIB.

## II.      Legal Standard

### A.      Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to

conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with

or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Judicial review of the

Commissioner's denial of benefits is limited this question:  Whether substantial evidence in the

record supports the factual findings and whether the Commissioner applied the correct legal

standards.  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a

preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While

the courts "consider whether the ALJ followed the specific rules of law that must be followed in

2

weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks omitted).  But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted).  When they decide whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]"  *Id.* (citation omitted).  "'Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'"  *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis."  *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases.  *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*).  Some errors are harmless and require no remand or further consideration.  *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

**B.      Disability Determination**

Claimants seeking DIB carry the burden to show that they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)).  As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)–(g).  The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point

that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799,

801 (10th Cir. 1991).

## III.  Discussion

The ALJ found that plaintiff has the following severe impairments:  depression, anxiety,

adjustment disorder, migraines, and obesity.  Doc. 10 at 22 (AR 18).  However, the ALJ

concluded that plaintiff does not have an impairment or combination of impairments that meets

the severity of one of the listed impairments in 20 C.F.R. pt. 404.  Doc. 10 at 22–23 (AR 18–19).

The ALJ also concluded plaintiff had non-severe impairments of gastroesophageal reflux disease

and degenerative disk disease, indicating that evidence established only slight abnormality or

combination of abnormalities "which would have no more than a minimal effect on an

individual's ability to perform basic work activities."  Doc. 10 at 22 (AR 18).  Instead, the ALJ

found that plaintiff has the Residual Functional Capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following non-
> exertional limitations:  The claimant could have no exposure to unprotected heights,
> moving mechanical parts or other workplace hazards.   She could maintain
> concentration, persistence and pace with normal breaks for simple tasks with few
> workplace changes.  She could have occasional interactions with the general public,
> coworkers and supervisors.

*Id.* at 24 (AR 20).  Based on the RFC finding, the ALJ determined that plaintiff was unable to

perform any past relevant work.  *Id.* at 27 (AR 23).  But, given plaintiff's age, education, work

experience, and RFC, the ALJ concluded there were jobs "existing in significant numbers in the

national economy" that the plaintiff could have performed as delineated in 20 C.F.R. §§

404.1569 and 404.1569(a).  *Id.*

Plaintiff challenges the Commissioner's findings in three ways.  She argues that:  (1)

there is not sufficient substantial evidence to support the ALJ's decision because his analysis

contains factual errors; (2) the Commissioner erred in his conclusion that plaintiff's condition did not meet Listing 12.04 or 12.06; and (3) the ALJ erred by failing to consider the limitations from plaintiff's migraine headaches.  The court addresses each argument in turn.

### A.  The Substantial Evidence Requirement

Plaintiff argues that the ALJ's decision relied upon factual inaccuracies, and, consequently, there was insufficient substantial evidence to support the determination. Specifically, she argues:  (1) factual errors compromise the ALJ's conclusion about Listings 12.04 and 12.06 in step 3; (2) factual errors compromise the ALJ's conclusion about plaintiff's residual functional capacity ("RFC") in step 4; and (3) the ALJ's evaluation of the consistency between plaintiff's testimony and the medical records was flawed.  The court addresses plaintiff's arguments, in turn, below.

### 1.  The ALJ's evaluation of Listing 12.04 and 12.06 is not flawed because the factual errors he made were harmless and substantial evidence supported his decision.

Plaintiff argues that the ALJ's decision that she did not meet or equal Listing 12.04 or 12.06 contained multiple factual errors and did not rely on substantial evidence.  To meet Listing 12.04 or 12.06, a claimant must satisfy:  (1) specified diagnostic criteria for the impairments of depression and anxiety, and (2) either (a) an "extreme" limitation of one or (b) "marked" limitation of two of the following functions:  understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.  20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(A)(2)(b) ("Paragraph B Criteria").  Alternatively, an individual meets Listing 12.04 or 12.06 if, in lieu of the Paragraph B Criteria, the Agency determines the individual's condition is serious and persistent.  *Id.* at § 12.00(A)(2)(c) ("Paragraph C Criteria").  However, because plaintiff here does not argue that she

meets Paragraph C's criteria, the court need not consider this issue further.  *Cavlovic v. J.C. Penney Corp.*, 275 F. Supp. 3d 1267, 1271 (D. Kan. 2017) (explaining that arguments not raised are waived (citing *ClearOne Commc'ns v. Biamp Sys.*, 653 F.3d 1163, 1184–1185 (10th Cir. 2011) (further citations omitted))).

"[M]inor factual discrepancies . . . do not serve as a basis for reversal where . . . the ALJ's decision is otherwise supported by substantial evidence."  *Todorova v. Comm'r, SSA*, 762 F. App'x 510, 514 (10th Cir. 2019) (citing *Allen v. Barnhart*, 357 F.3d at 1145).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (citation and internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high" but it is "more than a mere scintilla."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted).  In applying for DIB, the Commissioner "has the express statutory authority to place the burden of showing a medically determinable impairment on the claimant."  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Also, "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities[.]"  SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).  The court agrees that the ALJ made several factual errors but concludes that these errors amounted to harmless error.  The court also finds that the ALJ provided substantial evidence to support:  (a) his finding that plaintiff's statements about her symptoms were not wholly consistent with the objective medical evidence; and (b) his decision that plaintiff does not meet or equal the 12.04 or 12.06 listing.

Plaintiff argues that errors "poison every aspect of the ALJ's decision."  Doc. 13 at 3. The Commissioner acknowledges the errors, arguing they are harmless.  Doc. 12 at 7 n.2.  Here, it is evident that the ALJ made factual errors.  The ALJ wrote that plaintiff used Facebook but plaintiff specifically testified she never used Facebook.  Doc. 10 at 23, 58 (AR 19, 54).  Also, the ALJ stated plaintiff testified she was independent in personal care and attended medical appointments independently and timely.  Doc. 10 at 23 (AR 19).  But the record shows that plaintiff never testified about her personal care or timeliness in attending medical appointments. So, the court must consider what effect, if any, such errors might have had on the ALJ's decision.

The court finds no reversible error based on the Facebook error because there is no reasonable basis to conclude that the ALJ's outcome would have differed had he correctly noted plaintiff did not use Facebook.  Also, despite two opportunities during the hearing to present testimony supporting deficits of personal care or difficulty attending medical appointments, plaintiff provided no such testimony.  Nor did the records plaintiff submitted provide support for a finding that she was unable to perform these activities.  Because plaintiff bears the burden of proof at this step, the ALJ could have concluded plaintiff was independent in personal care and punctually attended medical appointments even had he not erred by making these factual findings.  These factual errors thus constitute harmless error and do not merit further consideration.

Plaintiff also deems erroneous some facts subject to interpretational differences.  For example, she questions whether watering plants equates to caring for plants, and whether reading just the AARP magazine equates to reading magazines or reading a magazine.  Doc. 11 at 16. One reasonably could interpret "watering plants" as caring for plants and, likewise, reasonably

construe plaintiff's statement she went through AARP magazines to mean that she read magazines.  Because the ALJ's interpretations were reasonable, the court cannot reconsider these statements even though it might have interpreted them differently had it reviewed them *de novo*.

Plaintiff further argues that the ALJ misstated her testimony, creating an erroneous narrative by omitting many details of the testimony and, by doing so, failed to grasp how her symptoms have affected her.  As examples, she cites the ALJ's reference to her preparing her husband's lunch.  Plaintiff contends that the ALJ omitted that she had to write herself a note because she forgot that he worked on Wednesdays.  In addition, the ALJ noted that plaintiff attended to email, but omitted that she had to stop after 15 to 20 minutes because attending to email increased her anxiety.  Doc. 11 at 15.  But, the ALJ also noted plaintiff's testimony that she was socially withdrawn, had mood swings, and experienced anxiety and depression.  Doc. 10 at 23 (AR 19).  Also, the ALJ concluded there were moderate limitations on plaintiff's capacity and noted, correctly, that plaintiff spent time taking care of her household and attended church during the adjudication period.  *Id.*  Also, plaintiff was able to drive, shop by telephone, and expressed no need for assistance with these activities.  *Id.*  The court concludes that the ALJ, by framing plaintiff's self-reported abilities against her self-reported symptoms, did not improperly characterize or otherwise err in assessing plaintiff's testimony.

Moreover, the ALJ delineated the medical evidence upon which he relied, including findings by both KU Mental Health and Dr. Horsch more temporally immediate to the adjudication period.  Doc. 10 at 25–26 (AR 21–22).  In doing so, the ALJ found objective medical evidence showed that plaintiff's functional level differed from her testimony.  The ALJ never concluded that there were no functional limitations.  Instead, the ALJ found that plaintiff had moderate limitations in three Paragraph B criteria and no limitation for the fourth.  Doc. 10

at 23 (AR 19).  Thus, the ALJ properly concluded that plaintiff didn't meet the 12.04 or 12.06

listing.  Because the ALJ provided substantial evidence and his factual discrepancies did not

constitute reversible error, the court concludes the ALJ's assessment was not flawed.

> **2. The ALJ's assessment of plaintiff's RFC was not flawed because the factual errors in his decision were harmless and he relied upon substantial evidence to reach his conclusion.**

Plaintiff next argues that the ALJ's assessment of her RFC made multiple errors.

Specifically, she asserts that he failed to consider evidence that she is unable to perform at the

RFC level, and that he either misinterpreted or misconstrued the evidence in the record.  If a

claimant does not meet or equal one of the conditions listed in the step 3 analysis, the ALJ must

determine the claimant's RFC.  20 C.F.R. § 404.1520(e).  This step requires the ALJ to assess a

claimant's ability to perform sustained work given any restrictions resulting from all

impairments, including the non-severe impairments that the ALJ identified in step 2.  20 C.F.R. §

404.1545.

Plaintiff asserts the ALJ made multiple errors in the RFC determination.  As the court

already has discussed, the undisputable errors were narrow in scope and, therefore, amounted to

harmless error.  Plaintiff cites additional errors in the ALJ's opinion, which, she argues,

undermine the substantial evidence the ALJ relied upon, particularly as it affects his review of

the medical evidence.  Plaintiff specifically points to the ALJ's statement that "in fact, the

claimant's symptoms were controlled to the extent there was no modification in her medication

regimen[,]" Doc. 10 at 26 (AR 22), adding that the ALJ erred because, in fact, plaintiff was

participating in a medical study where she underwent medication changes, Doc. 11 at 17.

Plaintiff's argument mischaracterizes the evidence.  The ALJ's description came from the

January 2016 KU Mental Health visit.  The court's review of that evidence confirms that the ALJ

accurately cited those findings.  Doc. 10 at 26, 334–335 (AR 22, 330–331).  The ALJ properly

evaluated the medical evidence, noting improvement with medication, sufficiently controlled

symptoms such that plaintiff was looking for a job, and that, over time, plaintiff had become

more cheerful, plaintiff was spending more time outside her house, and had traveled to visit

family and friends.  Doc. 10 at 26 (AR 22).  The ALJ concluded from the evidence that

plaintiff's mental RFC was reasonable.  *Id.*  The court finds the ALJ sufficiently considered the

medical evidence in reaching his decision.  And, he provided sufficient substantial evidence to

support the decision.  Thus, the errors in the ALJ's report are no more than harmless error, and

his assessment of plaintiff's RFC was not flawed.

### 3.  The ALJ's evaluation of the consistency between plaintiff's testimony and the medical evidence was not flawed.

Plaintiff's third argument contends that the ALJ erred when he evaluated the consistency

between plaintiff's testimony and the medical evidence.  "Credibility determinations are

peculiarly the province of the finder of fact, and [the court] will not upset such determinations

when supported by substantial evidence."  *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir.

2008) (citation and internal quotation marks omitted).  "[A]n ALJ's findings with respect to a

claimant's credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings."  *Hardman v. Barnhart*, 362 F.3d 676, 678–79 (10th

Cir. 2004) (citation and internal quotation marks omitted).[2]  Here, the ALJ cited specific findings

that substantial evidence supported.  From that evidence, the ALJ concluded that plaintiff's

---

[2]      While the Commissioner has stopped using the term "credibility," the Social Security
Administration "has not altered the fundamental rule applicable here, that if an individual's statement
about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective
medical evidence and other evidence, [an ALJ] will determine that the individual's symptoms are less
likely to reduce his or her capacities to perform work-related activities."  *Zhu v. Comm'r, SSA*, ___ F.
App'x ___, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (citation and internal quotation marks
omitted).

subjective symptoms were "not wholly consistent" with the medical evidence.  Thus, the ALJ properly executed the consistency evaluation.

Plaintiff argues that the ALJ's factual errors, combined with his failure to consider the medical evidence properly, undermine his evaluation of the consistency issue.  The court has considered the minor factual errors above, found them to amount to harmless error, and it need not address them further.  Moreover, the ALJ's narrative demonstrates he read and properly considered the medical evidence.

The ALJ cited specific findings, including reports that the medication provided to plaintiff gave her "some control of her symptoms" and, that by January 2016, medical providers had recorded the patient as "doing well," continuing to look for work, and needing no modification of her medication regimen.  Doc. 10 at 25–26 (AR 21–22).  The ALJ noted continuing improvement in symptoms even after the adjudication period, culminating in his citation to more recent treatment notes from February 2017.  These notes observed that plaintiff was "spending more time outside of the house, was more cheerful and even traveled to Texas to visit friends and her daughter."  Doc. 10 at 26 (AR at 22).  Thus, while the ALJ concluded that "[c]ounseling notes dated between 2014 and 2016 . . . do not support a disabling mental condition[,]" his opinion demonstrates that he considered and reviewed the actual findings in the record in reaching his conclusion.  Doc. 10 at 26 (AR 22).  Consequently, the ALJ's evaluation of the consistency between plaintiff's testimony and the medical evidence was not flawed.

Having found no reversible error in the ALJ's opinion nor that the ALJ's consistency evaluation was flawed, the court finds that there was substantial evidence to support the ALJ's decision that plaintiff did not meet or equal Listing 12.04 or 12.06.  Likewise, substantial evidence supported his determination of plaintiff's RFC.

**B.  The Commissioner's analysis of whether plaintiff's condition met Listing 12.04 and 12.06 was sufficient to support decisions by the Agency and the ALJ.**

Plaintiff argues the Commissioner erred in the analysis of whether plaintiff's condition met Listing 12.04 and 12.06.  Plaintiff argues specifically that:  (1) the Commissioner failed to evaluate properly her treating psychologist's opinions during the agency's reconsideration; and, (2) the ALJ failed to give proper weight to her treating psychologist's opinions in reaching his conclusion.  The court considers both arguments, in turn, below.

**1.  The agency's misstatement of plaintiff's last date worked during its reconsideration of plaintiff's application constitutes harmless error.**

Plaintiff argues the Commissioner, in reconsidering plaintiff's application, improperly evaluated Dr. Horsch's opinions.  Plaintiff asserts, correctly, that the Commissioner erred in recording a last date worked in August 2015 and giving that erroneous date any weight when assessing Dr. Horsch's credibility.  However during the later hearing, the ALJ elicited the last date worked correctly and did not rely on the earlier error when reaching his conclusions.  Doc. 10 at 26–27, 43 (AR 22–23, 39).  Here, the court need not speculate whether the agency's action constitutes harmless error since the ALJ's decision explicitly establishes that the error did not affect his findings.  The court finds no reversible error on this issue.

**2.  The ALJ gave proper weight to Dr. Horsch's opinion when reaching his decision.**

Plaintiff next argues that the ALJ did not properly weigh Dr. Horsch's opinion because: (a) he did not cite to the medical record in his step 3 evaluation; (b) he improperly discounted Dr. Horsch's opinion; (c) he improperly considered Dr. Horsch's Global Assessment of Functioning Score; (d) he improperly interpreted plaintiff's attempts to procure work as inconsistent with Dr.

Horsch's opinions; and (e) he improperly dismissed Dr. Horsch's conclusion about "expected

levels."  The court addresses each of these arguments, in turn.

> **a.   The ALJ's failure to cite the record in the Step 3 analysis represents harmless error because he provided sufficient information in his RFC analysis at Step 4 to demonstrate that he relied on substantial evidence to conclude plaintiff did not meet or equal the 12.04 or 12.06 listing.**

Plaintiff argues that the ALJ failed to cite the medical records when he decided the

"Paragraph B" criteria.  Our Circuit has held ALJs must set out their specific findings and

reasons for accepting or rejecting evidence at step 3.  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th

Cir. 1996).  But, the Circuit has explained, when an ALJ provides detailed findings at other steps

in the analysis that support the step 3 decision in a readily reviewable manner, the ALJ has met

the requirement.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (reversing

decision denying DIB because "any deficiency in the ALJ's articulation of his reasoning" was

"harmless" based on his "confirmed findings at steps four and five").  In *Fischer-Ross*, the ALJ

failed to include specific findings underlying the step 3 analysis within that discussion, but

included them instead at the step 4 and 5 discussion.  The Circuit affirmed the ALJ's findings,

holding that *Clifton*'s rationale aimed to assure that, upon judicial review, the reviewing body

had sufficient information to discern whether the ALJ had acted properly.  Thus, the Circuit

found harmless administrative error where the ALJ's decision showed he clearly had considered

the evidence even though the discussion appeared elsewhere in the record.  *Id*.

Like *Fischer-Ross*, the ALJ's step 3 analysis failed to cite sufficient findings to

demonstrate he had considered the record.  Doc. 10 at 23 (AR 19).  However, and like *Fischer-*

*Ross*, the ALJ's step 4 discussion contained multiple references to medical evidence which

provide more than the scintilla of evidence that the law requires.  Doc. 10 at 25–26 (AR 21–22)

(discussing medical evidence including treatment with medications and counseling, improvement after medication changes, reported improvement in symptoms, plaintiff's ongoing job searches, and Dr. Horsch's conclusions).  Consequently, while the ALJ erred by failing to cite sufficient evidence in his step 3 analysis, the error was harmless error because he cited the record within the RFC analysis.  The court holds that the ALJ thus provided sufficient information to demonstrate he appropriately considered the evidence when reaching his conclusions.  Also, the ALJ provided sufficient information to allow proper judicial review.

> **b. The ALJ did not improperly discount Dr. Horsch's opinion because he was not required to give it special deference and he found it inconsistent with other findings in the record.**

Plaintiff argues that the ALJ should have afforded more weight to Dr. Horsch's opinions than Kurt Leis's opinions because Dr. Horsch saw plaintiff more frequently than Mr. Leis and provided a different treatment modality over a longer time period.  This familiarity, she argues, provided Dr. Horsch greater appreciation for the effect and degree of plaintiff's mental conditions.  In disability claims filed after March 27, 2017, the Agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings" when making its determinations.  20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).  The primary factors for assessing medical source opinions are supportability and consistency and, where applicable, the agency must explain how it considered these factors.  20 C.F.R. § 416.920c(b)(2).  Where equally supported, consistent, and persuasive opinions or findings reach different conclusions, the Agency considers additional factors.  They include the relationship between the source and applicant as well as the source's specialization.  20 C.F.R. § 416.920c(c)–(d).  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007)

(citation and internal quotation marks omitted).  But, the court may "not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (citation and internal brackets and quotation marks omitted).

The Commissioner argues, and plaintiff concedes, that the ALJ need not assign controlling weight to any medical opinion.  Through multiple citations to the record, the ALJ's decision demonstrates that he reviewed the entire record even though he did not include every detail in his decision.  Doc. 10 at 25–26 (AR 21–22).  Here, absent a controlling opinion, the ALJ evaluated the medical findings and opinions, and, finding Dr. Horsch's November 28, 2017 statements at least partially inconsistent with and unsupported by other evidence, he did not err in finding Dr. Horsch's report less persuasive than Mr. Leis's records.

Plaintiff also cites findings from Dr. Heidi Ogden, whom she indicates "noted inability to concentrate with low mood and constant general anxiety." Doc. 13 at 4.  Careful review of Dr. Ogden's findings provides a much different narrative, however, because they include multiple evaluations that began nearly a year after the adjudication period and continued for nearly two years thereafter.  During that time, Dr. Ogden and her assistant assessed plaintiff's concentration as good during all but three assessments.  And in those three exceptions, she found plaintiff's concentration was fair.  Doc. 10 at 415–447 (AR 411–443).  Comparing Dr. Ogden's examination findings from just before and after Dr. Horsch's November 28, 2017 letter shows that Dr. Ogden rated plaintiff's concentration "good" on both October 24, 2017 and December 4, 2017.  Doc. 10 at 682, 685 (AR 678, 681).  Although the ALJ did not specifically discuss Dr. Ogden's findings from one to three years after the adjudication period, they do not support

plaintiff's argument that the ALJ erred in affording less weight to Dr. Horsch's opinions based on consistency and supportability.

The record also shows that the ALJ knew of and considered evidence that was contrary to his overall findings.  He noted, for example, that the medication only had partially relieved plaintiff's symptoms, and she had ongoing symptoms justifying limited interactions with others and reduced concentration abilities.  Doc. 10 at 26–27 (AR 22–23).  However, the record shows Mr. Leis provided substantial detail about plaintiff's mental status during every appointment with plaintiff, and each one was consistent with the ALJ's narrative factual recitation.  Doc. 10 at 334–361 (AR 330–357).  Additionally, the ALJ's decision shows he reviewed and considered Dr. Horsch's earlier, contemporaneous treatment record, noting that the record did not fully agree with her opinions from November 28, 2017.  In weighing consistency and supportability, the ALJ reasonably justified affording similar or greater weight to Mr. Leis's findings and opinions than he did to Dr. Horsch's opinions.

> ### c.  The ALJ did not improperly consider Dr. Horsch's Global Assessment of Functioning Score.

Plaintiff asserts the ALJ erred when he objected to Dr. Horsch's Global Assessment of Functioning ("GAF") Score of 56.  Doc. 11 at 21.  Our Circuit has recognized that "generalized GAF scores . . . may be helpful in arriving at an RFC, but [they] are not essential to the RFC's accuracy."  *Luttrell v. Astrue*, 453 F. App'x 786, 791 n.4 (10th Cir. 2011) (citation and internal quotation marks omitted).  Where substantial medical evidence supports the ALJ's decision, failure to discuss specifically all the GAF scores is not fatal.  *Kearns v. Colvin*, 633 F. App'x 678, 682 (10th Cir. 2015) (holding that where the ALJ ably described the "overarching evidence" of plaintiff's clinical course, failure to discuss GAF scores did not invalidate the analysis).

Here, it is not entirely clear whether plaintiff contends that the ALJ erred by not giving the GAF controlling weight.  Likewise, it's not clear whether she argues that the ALJ erred by not explaining why he decided not to assign the GAF much weight.  To be sure, the ALJ cited Dr. Horsch's November 28, 2017 GAF score in his decision.  But the decision does not mention the GAF score again or any of the multiple other GAF scores in the record, all within a similar range, 49–60.  Doc. 10 at 328, 334–361, 605–614 (AR 324, 330–357, 601–610).

Plaintiff cites Administrative Message 13066 ("AM-13066") but never explains how the ALJ's decision conflicts with that guidance.  Doc. 11 at 21 (citing AM-13066).  Plaintiff did not provide a copy of AM-13066 with her brief but the court, after considerable effort, located a copy of it.  As our court has recognized, the Social Security Administration amended that message in October 2014 explaining:

> [A] GAF needs supporting evidence to be given much weight.  By itself, the GAF cannot be used to "raise" or "lower" someone's level of function.  The GAF is only a snapshot opinion about the level of functioning.  It is one opinion that we consider with all the evidence about a person's functioning.  Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

*William Edward S. v. Saul*, No. 19-1061-JWL, 2020 WL 569806, at *10 (D. Kan. Feb. 5, 2020) (quoting AM-13066 (July 22, 2013) rev. (Oct. 14, 2014) (quoted in *Hallman v. Berryhill*, No. CIV-16-903-BMJ, 2017 WL 2424664, at *6 (W.D. Okla. June 5, 2017))).  Also, as the Second Circuit has noted, the message provides that "'[u]nless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to *little weight* under our rules.'"  *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting AM-13066) (emphasis added).

Here, the ALJ does not explain clearly why he did not treat the GAF as controlling evidence.  But, at the same time, the GAF score that Dr. Horsch assigned and that plaintiff cites,

Doc. 10 at 627 (AR 623), never "clearly explains the reasons behind" the GAF score nor "the period to which the rating applies[.]"  AM-13066.  So, as the Administrative Message instructs, "it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Id.*  The court thus concludes, if it was an error for the ALJ to fail to explain why he did not assign Dr. Horsch's GAF score controlling weight, this omission was harmless error.  *See William Edward S.*, 2020 WL 569806, at *10 (concluding that "[i]f the ALJ's failure to discuss this GAF score was error, that error was harmless"); *see also Kearns*, 633 F. App'x at 682 (explaining that when "[s]ubstantial evidence supports the ALJ's decision, . . . his failure to specifically discuss all of the GAF scores was not fatal").

The court also considers the alternate possibility that plaintiff actually is arguing the ALJ improperly afforded the GAF score probative weight.  But, the decision barely refers to the GAF score and, even assuming that the ALJ afforded it much weight, he provided ample evidence found in other parts of the record to support his conclusion that plaintiff's functional impairment—while present and sufficient to justify moderate limitations on the RFC—did not support a conclusion that plaintiff had severe functional impairments.  Therefore, the ALJ did not err in his treatment of the GAF score.

### d.  The ALJ did not improperly consider plaintiff's ongoing search for work in reaching his conclusions.

Plaintiff argues that her continued job searches do not support the ALJ's conclusion that she had any residual functional capacity or that plaintiff's behaviors were inconsistent with her testimony.  An ALJ may cite a plaintiff's expressed interest in returning to work when determining credibility.  *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013).  In *Newbold*, the ALJ cited the plaintiff's statements professing interest in returning to work and school as

inconsistent with her subjective complaints of extreme limitations.  *Id.*  The court affirmed the

ALJ's credibility assessment.  *Id.* at 1268.

Here, plaintiff argues that the ALJ erred by weighing her declared interest to return to

work and her job searches against her, citing *Hawkins v. First Union Corp. Long-Term Disability

Plan*, 326 F.3d 914, 918 (7th Cir. 2003).  *Hawkins* recognized that a "desperate person might

force himself to work despite an illness that everyone agreed was totally disabling."  *Id.*  That

Seventh Circuit case differs materially from the facts here, however.

*Hawkins*'s medical evidence incontrovertibly supported plaintiff's assertion that he was

totally disabled.  *Id.* at 916.  Here, the record does not suggest that any of plaintiff's treating

sources thought she was totally disabled, particularly during the adjudication period.  Dr.

Horsch's treatment record specifically states she helped plaintiff "discover what would be

motivation to work," and was "working toward perspective and insight."  Doc. 10 at 326 (AR

322).  One reasonably could infer that Dr. Horsch had not concluded plaintiff was totally

disabled.  Because the record does not support a conclusion that plaintiff was totally disabled, the

ALJ did not unreasonably consider plaintiff's ongoing job searches or professed desire to find a

job when assessing Dr. Horsch's statement.

> **e.   The ALJ did not improperly discount Dr. Horsch's conclusion
> about plaintiff's deficits interfering with her ability to perform
> at expected levels because Dr. Horsch's use of that term does
> not provide the ALJ a sufficient basis to reach any
> determinable opinions about plaintiff's RFC.**

Plaintiff also argues Dr. Horsch's statement that plaintiff's memory and thinking interfere

with her ability to "perform at expected levels" is not unclear.  An ALJ may discount a treating

source's statement where it does not accurately state a claimant's true functional capabilities.

*Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (holding that the ALJ did not err by

rejecting the treating physician's opinion that claimant had "severe limitations" as generic because it did not delineate her functional capabilities for physical exertional requirements under 20 C.F.R. § 416.967). Here, the ALJ found, Dr. Horsch's statement that plaintiff was unable to "perform at expected levels" was unclear because it does not better define "expected levels." Doc. 10 at 26 (AR 22). Plaintiff argues that "in the context of a disability application, the comparison point is that of someone who is not disabled." Doc. 11 at 21.

Plaintiff's binary interpretation notwithstanding, "expected levels" is no less generic than *Bean*'s "severe limitations." Dr. Horsch's statement would have required the ALJ to apply a medical source's undefined conclusion to an RFC. One reasonably could interpret "expected performance levels" to refer to prior job requirements as opposed to any job's requirements. In a disability evaluation, this interpretation may produce a substantially different result. Because more than one plausible interpretation of "expected levels" exists and Dr. Horsch did not define the term, the ALJ acted reasonably when he discounted that assessment.

Given these findings, and because the record contains no incontrovertible evidence supporting plaintiff's position which the ALJ failed to consider, the court concludes that substantial evidence supports the ALJ's decision, according less weight to Dr. Horsch's November 28, 2017 letter (and associated documents) than he gave to other sources. The inconsistencies between these documents and the other record evidence warranted the ALJ's decision to discount Dr. Horsch's opinions, and the governing legal standards forbid the court from reweighing that evidence.

### C. The ALJ did not fail to consider the limitations from plaintiff's migraine headaches.

Finally, plaintiff asserts the ALJ failed to consider the limitations she attributes to migraine headaches. "Credibility determinations are peculiarly the province of the finder of fact,

and [the court] will not upset such determinations when supported by substantial evidence."

*Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (citation and internal quotation marks

omitted).  In *Newbold*, the ALJ found one could reasonably expect plaintiff's allegations of pain

and fatigue to cause her alleged symptoms.  But, finding plaintiff's allegations inconsistent with

her daily activities and lacking any contrary objective medical evidence, the ALJ concluded that

plaintiff's symptoms were not disabling.  *Id.*  The Circuit held that substantial evidence

supported the ALJ's determination.  *Id.* at 1267–68.

Here, the ALJ similarly recognized plaintiff's migraine headaches could cause her

symptoms.  But, finding the allegations inconsistent with plaintiff's daily activities and lacking

contrary objective medical evidence, the ALJ concluded the migraine diagnosis justified certain

functional limitations but did not suffice to cause disability.  Doc. 10 at 25 (AR 21).  Plaintiff

cites multiple pages in the record supporting severe migraine headaches.  Doc. 11 at 23.  A

record review shows the citations come from the period 2011 through 2014, well before the

adjudication period.  Notably, the 2012 records which plaintiff cites show a headache frequency

ranging from none per week to two per week.  Doc. 10 at 291 (AR 287).  This quantity is

substantially less than plaintiff described in her testimony of at least four per week.  Doc. 10 at

53 (AR 49).  Upon record review, the ALJ specifically noted that plaintiff experienced no

exertional limitations during the adjudication period.  Doc. 10 at 25 (AR 21).

Those records confirm plaintiff's migraine diagnosis and treatment but contain just one

entry of a migraine headache requiring extra treatment.  Doc. 10 at 325 (AR 321).  From this

minimal medical activity level, one reasonably could conclude the migraine headaches were not

causing plaintiff significant problems.  The patient herself told Mr. Leis on October 21, 2015,

that "she has also dealt with headaches that *might* contribute to making it harder for her to work."

Doc. 10 at 335 (AR 331) (emphasis added).  Plaintiff's equivocation, absent contrary evidence of disability due to migraines, support the ALJ's conclusion that plaintiff's migraines, while present and sufficient to justify RFC modifications, were not sufficiently severe to disable her.  This was a reasonable conclusion for the ALJ to draw.  Therefore, the court concludes that the ALJ applied the correct legal standard and did not improperly fail to consider plaintiff's migraine headaches when reaching his determination.

## IV.     Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's Social Security Disability benefits is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 13th day of September, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**